Case No. 25-5030, Ernest F. Mitchell, Lt. Appellant v. John Phelan, Honorable, in his official capacity as the Secretary of the Navy. Mr. Thayer for the Appellant, Mr. Walker for the Appellate. Chief Judge, Your Honors, may it please the Court, my name is Dylan Thayer. I am here on behalf of the Appellant, Lt. Ernest F. Mitchell. Today, Lt. Mitchell presents two errors on appeal. First, the DCNR erred in determining that Lt. Mitchell was not promoted by operation of law under 10 U.S.C. 624 D-5. That statute states, quote, the appointment of an officer may not be delayed for more than 18 months beyond the date on which the officer would have otherwise been appointed. Lt. Mitchell's promotion to Lieutenant Commander was originally scheduled for August 1, 2020. Lt. Mitchell was removed from the promotion list by the Secretary in April of 2022. That is a delay of 20 months. That violates the express command of the statute. Now, the Secretary stated in his brief that automatic promotion by operation of law is not provided in the statute on its face, and that's true. But Congress has left us a trail of red crumbs to follow to indicate that promotion by operation of law is, in fact, Congress's intent in this circumstance. First, reading 10 U.S.C. 624 D-5 out of the statute would clearly violate the rule against surplusage. Second, Congress has legalized appointment by operation of law for senior officers before. Second, 10 U.S.C. 629 C-1 and C-4 provides for automatic removal only if the officer has failed to secure Senate confirmation. Here, Lt. Mitchell was nominated by the President, he was confirmed by the Senate, and then a public act took place, the tolling of the 18-month period under 10 U.S.C. 624 D-5. Fourth, 10 U.S.C. 624 D-4A makes no sense if officers are not promoted by operation of law. That provision of the statute requires written notice, quote, unless it is impracticable to give such written notice before the effective date of the appointment, in which case written notice shall be given as soon as practicable. If officers are not promoted by the effective date of the appointment by operation of the statute, that makes no sense. There's no danger to be averted there. If, however, officers are in fact promoted by operation of the statute, then there's a concern that notice might not be able to be passed to the officer in time before the promotion takes place. You're talking about notice of? Notice of adverse information that's been discovered against the officer during the promotion process. Now, reviewing the statute, the court in Rollator v. United States in 1999 for the Federal Circuit expressed deep concern that not only could a high-level official like the secretary delay the appointment for longer than 18 months, but that a relatively lowly person in the military hierarchy could delay the appointment longer than the statutory period. It strains credulity, Your Honors, to think that Congress cannot regulate the manner in which the appointment power can take place, but that a relatively low member of a military service branch can't. And the Rollator court was extremely concerned about that very circumstance. And reviewing the service branch's interpretation of the statute and reviewing other materials, it concluded that absent presidential action within 18 months, promotion is automatic. Now, the Dysart and Lewis courts in 2004 and 2006 came back and overturned that a few years later, but there was no change in the statutory language, Your Honors. And in fact, the Lewis and Dysart courts conceded that the president's power to appoint under the Constitution can, in fact, be regulated by Congress. While Congress cannot tell the president to exercise his appointment power, Congress may nonetheless regulate the use of the appointment power. So the Lewis and Dysart courts were correct about that, but they made a category error in finding that this was a requirement to exercise the appointment power, not a regulation of the appointment power. It's well established under the law that presidential inaction can nonetheless be action with the force of law. We see that in the Constitution with pocket vetoes. We see that in 50 U.S.C. 622D concerning the lapsing of a national emergency. Congress, pursuant to its power to make rules and regulations for the governing of the land and naval forces, may regulate the president's appointment power in the military sphere. What if Congress passed a law that said the president will nominate, recognizes the president will nominate, it recognizes that the Senate will confirm, and it says the president's appointment after confirmation will happen five seconds after confirmation? And whether to appoint someone after confirmation? Yes, Your Honor, I think that that would be constitutional. And then there's two reasons. First and foremost, Congress can regulate the appointment power. So actually, I guess there's three reasons, Your Honor. Congress can regulate the appointment power. That's number one. Number two, the president, in fact, has an opportunity in that process to review the qualifications of service members. He has that opportunity during the nomination process. During the nomination process, a list is reviewed by the service branches through the selection boards. It's sent to the president for approval. So he has that opportunity. And then third, Your Honor, if adverse information is discovered after the promotion is effected, whether the appointment is made five seconds after the nomination or whether it's made 18 months by operation of the statute, the president has the opportunity to launch a board of inquiry. So let me – new hypothetical. The statute says recognizes the president will nominate, recognizes the Senate will confirm, and it says immediately upon the Senate's vote to confirm, the person is appointed. Is that constitutional? No, I would think not, Your Honor. Your argument depends on the five-second difference between the first hypothetical and the second hypothetical? I think there has to be a – Marbury v. Madison said there has to be a moment in time when the appointment power ceases. So there has to be some sort of cleavage between the nomination process and the appointment process. Now, I think if Congress wanted to set that at five seconds, I think Congress would be able to do that pursuant to its ability to regulate the use of the appointment power. And as I mentioned, the president would not be left without remedy if after – One second. I think there has to be a split, Your Honor. Clearly, it's a three-step process under the Constitution, under the Supreme Court's holding in Marbury v. Madison. You were saying the president would not be without remedy. You said the president can launch a board of inquiry. I mean, the president has removal power now. Yes, yes, but there are due process concerns with exercising that removal power in an arbitrary and capricious manner. So there has to be some sort of process afforded to the service member, but also the president can do a grade determination when the member is being retired. So if the appointment power is exercised and the president later decides or discovers information such that the member is not fit to hold his particular grade, the president does have options. And so I think that that issue that Your Honor – I just don't see how the appointment power is being exercised in either of two scenarios. One is the hypotheticals that I've been giving you, but another is our case where the appointment will happen automatically, at least absent a statute that very expressly states that the appointment will happen on day 181 if the president hasn't acted first. I think arguably there – you would have a better argument there that the president is on sufficient notice to know that his silence for 180 days will be the choice to appoint. But as you began your argument, at best we've got some breadcrumbs here, not an express notice to the president that this is how you will exercise your appointment power. It's true, Your Honor. That's not expressly delineated in the statute. It's not expressly delineated in the statute what happens to the officer after those 18 months. But Congress's command is clear. You cannot have the officer in the delay status for 18 months. But is it clear, I mean, in the delay status and then potentially the confirmation expires? Because – so Section 624D does sometimes make clear what should happen after a delay. If an officer is criminally charged and then acquitted, that officer has to be retained on the promotion list. And the statute doesn't specify what should happen if an officer is convicted. But I think on your theory, given that there's a 90-day deadline for taking action in that situation, the convicted officer would get an automatic promotion, while the acquitted officer just goes back onto the list. And that seems like an intent that we would not reasonably ascribe to Congress. And if that's true, then why wouldn't a parallel reading be applicable here? I think you could ask the question another way, Your Honor, right? I mean, if the officer has been convicted and the president knows he's been convicted, why wouldn't the officer then be removed from the list? So I think that Congress is clearly putting the onus on the president here and on the executive branch to act. This court has previously ruled— The president is busy. 90 days. It's involved in other emergencies. Recommendation goes to him. Nobody acts on it. Really, that convicted officer is going to be automatically appointed? The president is certainly busy, Your Honor, but he has many people working for him. He has the Secretary of the Navy. He has the Navy's lower-level officers and functionaries. I think that this court has held in—and I see my time is up, so if I can just finish my answer to Your Honor's question. This court held in White v. Secretary of the Army that when the service branch makes errors, the onus is on the service branch to repair the errors, not the service member, because the service branch is better positioned to repair those errors than the service member. So in Your Honor's hypothetical, I think the onus is still on the service branch. There are two bases in the record, as far as I know, for the detachment for cause. Is it correct that either one is sufficient to uphold the Secretary's determination? Yes, Your Honor. He could be detached for cause under either 16.11.0203B or 3C, but he did not satisfy the statutory—or excuse me, the regulatory language of either provision, Your Honor. And you say that the period of time here was too short to show substandard performance over, quote, an extended period of time. That's correct, Your Honor. Are there any instances where a military body or a court has concluded that some period of time is too short to meet that standard? I'm not aware of any instances in which they've concluded that it's too short because the military usually wants to give itself as much leeway as possible. I am aware of other instances in which they have found that provision to be met. I believe those are included in our brief. One in Magnuson v. Mavis, that was 11 months. Another was 7 months. And in another scenario, the member who was detached for cause had three adverse fit reps, one of which was—I believe the language the court used was overwhelmingly negative. Lieutenant Mitchell did not have any adverse fit reps. So those scenarios are much more acute than the scenario Lieutenant Mitchell was in, Your Honor. And it's similar for the detachment for cause under 3B. That regulation requires gross negligence or complete disregard of duty. And if you look at the cases in our brief, Your Honor, Lieutenant Mitchell's misconduct clearly does not rise to that level. And you do, I think, a good job of saying that the records in those cases are more serious, but it still leaves you having to, you know, make new ground in terms of this being not an extended period. And you characterize Mitchell's poor performance as beginning with the letter of instruction, but doesn't the letter itself document some amount of poor performance preceding it? Certainly, Your Honor. And I think there's a fine distinction here. And I welcome the opportunity to elucidate our thinking here to the court. We certainly don't deny, we cannot deny this is the way time works. When the letter is given to Lieutenant Mitchell, obviously the incidents happened before what's contained in the letter. However, receiving a letter of instruction is a discrete event in the military. So prior to receipt of that letter of instruction, Lieutenant Mitchell's misconduct did not rise to the level where his superior officers considered it necessary to give him such a letter of instruction. So that's the distinction. It's not that we're saying that there's no misconduct prior to that date. We're saying at that date, his misconduct was considered significant enough, adverse enough, that he was given this letter, which is a specific and discrete event within the standpoint of military administrative discipline. You're saying you can make a kind of limited inference about how poor the performance was preceding that because it was only then when it kicked up. That's right, Your Honor. It's like if you give a child warnings about certain behavior, and then only at that point that they've done it a certain number of times, you put them in timeout. Was there misconduct prior to the letter? Of course. But only at that date did it rise to the level that his superiors felt the need to act. One clarification question. I'm going to ask the government about a part of their argument where they say it wasn't necessary to even show gross negligence or complete disregard of duty. All that needed to be shown was misconduct. What's your response to that? Yes, that's a good question, Your Honor. So I covered that in our brief. The government has forfeited that argument because it didn't present that argument in the district court, first of all. Second of all, the BCNR itself did not find that any misconduct could have satisfied Milper's Van 1611-020. It didn't evaluate it under the framework of 3A. If you look at the language that the correction board used, and that's what we're reviewing today is the correction board's decision. They evaluated it under the framework of 3B and 3C. I would also posit finally that, you know, it's a hallmark of statutory and regulatory law that regulations are not to be interpreted in a rigidly literal fashion. So if you look at the rest of the regulation for information about what misconduct satisfies detachment for cause, it says detachment for cause is one of the most serious measures that can be taken against an officer and should only be under, this is a quote, only be undertaken with full appreciation of its gravity. So that suggests that when it says any misconduct that it's backing away from that a little bit. It also says that if disciplinary action has not been taken against the member for the misconduct that forms the basis for the detachment for cause, the command must expressly indicate why. So there's clear limitations in the regulation itself. Okay. In addition to the fact that that argument is forfeited by the government. Anything else? No. Thank you. Thank you. We have for Mr. Walker. Thank you, Your Honor. May it please the court. Johnny Walker for the Secretary of the Navy. My friend has identified two issues for the court. The first, their contention that Lieutenant Mitchell was promoted by operation of law. The second, that the board's decision to maintain the detachment for cause in his records was arbitrary and capricious. I think that there is a clear and narrow path to affirmance on both of those issues, and I would like to address those with the court. On the first, their contention that Mr. Mitchell was promoted by operation of law, the simple matter is that the law provides no such operation. The law provides the outer limit for a delay, which is 18 months. We were over that 18 months here, but the remedy that they seek is nowhere found in the law, and I think my friend just acknowledged that here at the podium today. The law on its face nowhere provides for an automatic promotion. So what that leads to is essentially an application of the canon of the omitted case, where Congress has not provided for a particular remedy, is not up to a court to craft that remedy as a matter of statutory interpretation. So we think that is easily resolved. Is there any remedy? There could be. There could be. As we note in our brief, there could be. They could demand action, immediate action on the delay, but that delay can end in one of two ways, right? It doesn't necessarily end in a promotion. It could end in the gentleman being removed from the promotion. You mean they could go to court and ask the court to demand action? They would have to go through their inter-service remedies first. They could go to the board for the correction of naval records and seek appropriate remedy there, and if they didn't obtain it there, they could go to a court. So they'd go to the board for correction of naval records during the period of the court, or could he still do that and say this was an unlawful delay, I didn't get a decision in time? I believe there's a number of remedies they could go through. They could, you know, go to their direct commander and say I've been waiting too long, I need an action on my complaint. But, I mean, the cause of the delay. But not after the period has closed. After the 18 months has elapsed. They could do that. Yes, I think so. I mean, at that point, the military would be in violation of the statute, and to come out of violation of the statute, it would have to make a determination on the delay. On day 181, every person in the entire executive branch who is approached by Lieutenant Mitchell to make this happen soon says we're just going to delay. You're going to get no relief from us. So, you know, don't hold your breath. Does he have a remedy outside of the executive branch? He might. Once he exhausts his remedies, he might go to court for a mandamus. But, I mean, the violation there is the overlong delay. But there is nothing. But what he is arguing here is not just is that the statute itself provides this automatic remedy of a promotion, and that's nowhere in the statute. What about his response to my last question, which was really me kind of parroting your argument that the standard, this is now Issue 2, not Issue 1, the standard should be misconduct, not gross negligence or complete disregard of duty. And you heard his answer both on the forfeiture point and on the merits point. What's your response? Well, getting to my clear and narrow path for affirmance on the arbitrary and propitious point, I think it is this point about misconduct. Misconduct and not gross negligence was the basis for the commander's request for detachment. He mentioned nowhere in that request for detachment gross misconduct. He said, I request to detach Lieutenant Mitchell on the basis of misconduct and on poor performance of duty over an extended period of time. And it's not true that the board looked at this from a gross misconduct standpoint only. It addressed that when responding to Lieutenant Mitchell's arguments, which, again, mischaracterized the basis for the commander's request for detachment. But it also said on the very first page of the board's analysis that it was looking at this from a misconduct basis and that, quote, the misconduct was severe enough to justify all the penalties here. In the district court, the government did not address this from a misconduct perspective. We did not make the argument that this could be affirmed solely based on misconduct. But that is in part, again, because the counts in the complaint were two on the arbitrary and capricious points. There was one count that the standard did not meet gross misconduct, which, as I said, never applied to the disciplinary action in the first place. And the second was that the conduct or the performance, there was no poor performance over an extended period of time. So the government addressed the case as they framed it, so it was misframed from the way that the record frames it. So it's your position that the list doesn't expire after the period of – after it exceeds the permissible delay. It just is a prompt the government is supposed to act. And as you say, possibly it could be a jumping off point for mandamus or seeking some other attention within the executive branch or the like. But it's your position that Lieutenant Mitchell still could be appointed. I'm sorry, Lieutenant Mitchell? Could be appointed, that the nomination and confirmation by the Senate remain operative. Oh, yes. I don't think that there's an automatic consequence one way or the other when the delay expires. There's no automatic promotion. There's no automatic denial of a promotion in perpetuity. It's just that the promotion is continuing to be delayed by the Navy longer than the statute provides, but that's what it is doing. Again, the sort of three-part – the three-step exercise of appointment laid out in Marbury v. Madison I think serves both a functional purpose here as well as sort of a constitutional purpose. Constitutionally, there's a question as whether or not Congress even could do this. But functionally, we know that it just couldn't happen like that. There is no mechanism for an automatic appointment by operation of law because there has to be that positive act that Marbury v. Madison talks about to effectuate the appointment. Congress clearly said, and they should drop off the list after this period of time or the list should evaporate after the executive has enacted. Is that impermissible intrusion on the executive's appointment power? I know it's not something we have to decide. It may be because there you're barring the executive from taking an action. And I will note that the statute not only does not provide for – This is more about the facts of the case, and this is a question from someone who hasn't served in the Navy. Can you give us a sense of how minor or how major leaving the ship for maybe as little as 15 minutes and stopping McDonald's on the way for a friend who's hungry is? I think when you put the additional perspective on it, this wasn't just an individual leaving a ship, and it wasn't necessarily just 15 minutes. Lieutenant Mitchell's characterization of the amount of time he was off the ship has changed from somewhere under an hour, quote, to 15 to 20 minutes. But it wasn't just that he left the ship. He was the command duty officer in charge of the ship, and the ship was leaving port the next day. There were significant preparations underway. And as his commander, the commander of the Howard says, there were a number of things that could have gone wrong. And you or I as civilians may characterize this one way or the other, but I put a lot of stock in the fact that Mr. Mitchell's commander on the Howard said that this was serious and egregious misconduct, that the brigadier general, who was the commander over strike group 11, of which the Howard was a part, said this was serious and egregious conduct. The chief of naval operations said the same. The secretary said the same. And the board for the correction of naval records agreed with all of them. So I do think this is very serious conduct. As the board found, every senior leader of the Navy who examined the discipline that was imposed on Lieutenant Mitchell found it to be perfectly appropriate. And I think deferring to them, as this court's precedents require, this is far from arbitrary and capricious action by the board. Thank you. Thank you. Please affirm. Did Mr. Thayer reserve rebuttal time? You don't have to take it, but you may. I would like to, Your Honor. Thank you so much. I want to address first what my friend across the aisle said about the second issue, under Milford's Man 1611. He has admitted, the government has admitted, Your Honors, that this is forfeited. It was not addressed in the district court. The issue of whether or not any misconduct could form the basis for detachment was not addressed by the government for the district court. They may try to pin that on Lieutenant Mitchell, but the government has provided no reason why this court can review it now. And under this court's case law, the default rule is no review on appeal for issues forfeited in the district court. Also, Your Honor, it is not required to defer to the correction board in this instance to the heightened degree normally required for military personnel decisions. This is a review of a regulation. This court is perfectly free to employ normal arbitrary and capricious review to determine whether or not Lieutenant Mitchell's misconduct met the requirements of gross negligence or complete disregard of duty or substandard performance over an extended period of time. It did not. Now, turning to what my friend across the aisle said about 10 U.S.C. 624-D5, he essentially said 10 U.S.C. 624-D5 can operate and nothing happens. That violates the rule against surplusage, Your Honors, clearly. As a point of order, Lieutenant Mitchell did demand action. He did go to his leadership. He did ask for a decision. And this remedy that the secretary crafts where someone can go and demand action or someone can file a mandamus action, that's not in the statute either. So there's no indication in the statute on its face as to what happens in this instance. We're left with looking at the clues that Congress has given us, and the clues that Congress has given us very strongly indicate that at the end of the 18-month period, an officer is promoted by operation of law. Thank you. Thank you. The case is submitted.
judges: Pillard; Walker; Edwards